John W. Fagerholm (SBN 213852)
[Email: jfagerholm@jwflawltd.com]
M. Danton Richardson (SBN 141709)
[Email: drichardson@jwflawltd.com]
Stephanie B. Greenberg (SBN 324335)
[Email: sgreenberg@jwflawltd.com]
**LAW OFFICES OF JOHN W. FAGERHOLM, LTD**
611 North Brand Suite 1300
Glendale, CA 91203
T: 323-289-2260 | F: 323-642-5441

Attorneys for Plaintiffs, VASILIOS ARNE LEFALK, AMPRAZIS TECH INC., MELIGOLI INC., AND RYOULIVE INC.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

VASILIOS ARNE LEFALK, individually and on behalf of AMPRAZIS TECH INC., MELIGOLI INC., RYOULIVE INC.

Plaintiffs,

v.

OMAR FITZGERALD, MICHAEL J MACKEN, and JOHN HESS and Does 1-100.

Defendants.

**COMPLAINT FOR VIOLATION OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT ("RICO")**

**DEMAND FOR JURY TRIAL**

## COMPLAINT

1. Plaintiffs Vasilios Arne Lefalk, Amprazis Tech Inc., Meligoli Inc., and RYouLive Inc., for its Complaint against defendants Omar Fitzgerald, Michael J Macken, and John Hess, allege as follows:

## INTRODUCTION

2. This action arises from an elaborate and systematic scheme orchestrated by Defendants Michael J. Macken, Omar Fitzgerald and John Hess, designed to defraud Plaintiffs of substantial financial resources through acts of wire fraud, mail fraud, conspiracy, extortion, and forgery, in violation of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961–1968.

3. Defendants, acting in concert and as part of a coordinated criminal enterprise, targeted Plaintiffs' business operations and investments, causing severe financial harm, reputational damage, and disruption of business operations.

4. To further substantiate Plaintiffs' allegations regarding Defendants' participation in a RICO enterprise, a basic search of the names "Omar Fitzgerald" and "Michael J. Macken" readily reveals a consistent pattern of organized fraudulent conduct extending beyond the harm suffered by Plaintiffs. This broader pattern of activity demonstrates a deliberate and coordinated scheme to defraud and injure numerous victims, underscoring the systemic and far-reaching nature of Defendants' criminal operations. These actions unequivocally satisfy the elements of a racketeering enterprise under RICO, evidencing a calculated intent to exploit individuals on a wide scale.

5. Plaintiffs seek treble damages, punitive damages, injunctive relief, disgorgement of profits, and other remedies as permitted under RICO to address the egregious and unlawful conduct of Defendants.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 and 18 U.S.C. § 1964(c), as this action arises under the laws of the United States, specifically the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1962(c) and (d).

7. Venue is proper in this District pursuant to 18 U.S.C. § 1965(a) and 28 U.S.C. § 1391(b), as the unlawful actions alleged herein had a substantial effect within the United States, including this District, and certain acts in furtherance of Defendants' scheme occurred here.

8. This Court has personal jurisdiction over Defendants because their actions were purposefully directed toward the United States and its citizens, involved U.S.-based financial institutions, and caused foreseeable harm within this jurisdiction.

## PARTIES

9. Plaintiff Vasilios Arne Lefalk is the principal of Amprazis Tech Inc., Meligoli Inc., and RYouLive Inc., all corporations conducting substantial operations and transactions within the State of California.

10. Additionally, 13 other investors and two U.S. citizens, Alexander Wilson and Juha Kiesi, sustained direct financial harm as a proximate result of Defendants' actions. Notably, the funds lost by these 15 investors were expressly designated for investment in Amprazis Tech Inc. and RYouLive Inc.

11. Defendant Omar Fitzgerald is an individual who, upon information and belief, engaged in fraudulent financial transactions targeting U.S. investors and businesses.

12. Defendant Michael J. Macken is an individual who, upon information and belief, acted in concert with Defendant Fitzgerald to orchestrate the fraudulent scheme.

13. Defendant John Hess is an individual who, upon information and belief, participated in the conspiracy by facilitating forged documents, fraudulent communications, and other acts of racketeering activity.

## FACTS AND EVIDENCE

***Formation and Conduct of the Criminal Enterprise***

14. Upon information and belief, from at least 2016 through the present, Defendants Omar Fitzgerald and Michael J. Macken, along with their known co-conspirators—including John Hess—operated a criminal enterprise (the "Enterprise") designed to defraud individuals and businesses across multiple jurisdictions, including the United States, Ireland, and several other jurisdictions.

15. Upon information and belief, the Enterprise's objective was to deceive Plaintiffs and other investors through fraudulent representations, misappropriation of funds, and manipulation of contractual agreements, resulting in substantial financial losses to Plaintiffs.

***Fraudulent Inducement and Misrepresentation***

16. In February 2021, Omar Fitzgerald and Michael J. Macken induced Plaintiff Vasilios Arne Lefalk and his associated companies, Amprazis Tech Inc., Meligoli Inc., and RYouLive Inc., to provide substantial financial assistance based on fraudulent promises of repayment and investment returns.

17. Defendant Michael J. Macken falsely represented to Arne Lefalk that Omar Fitzgerald owed Michael J. Macken $5,000,000.00 USD and that Omar Fitzgerald would pay the debt owed to Plaintiff's for Michael J. Macken.

18. These representations were knowingly false and intended to mislead Plaintiffs into providing additional funds without receiving any corresponding benefits.

19. Since the date of promise to pay on behalf of Michael J. Macken, and for several years, Omar Fitzgerald has sent thousands of emails to Plaintiffs and Plaintiffs' representatives of his intent to pay the debt that Omar Fitzgerald agreed to pay on behalf of Michael J. Macken through large trading platforms.

20. Each promise made by Omar Fitzgerald to pay was false and usually included false and fraudulent documents of proof of payment to come from closed trades.

21. Each failure to pay by Omar Fitzgerald included offers to increase the debt owed after each failure to meet his obligations.

22. Each failure included a negotiated increase in the amount to be paid over several years.

23. The last promised sum from Omar Fitzgerald ballooned from the initial sum of $5,000,000.00 USD to $48,500,000.00 USD over the several years of Omar Fitzgerald's fraudulent acts and inducements to coerce Plaintiff's to avoid seeking legal remedies for the fraud and conspiracy of Omar Fitzgerald, Michael J. Macken and John Hess.

***Misappropriation of Funds and Unauthorized Transactions***

24. Plaintiffs transferred substantial funds, amounting to hundreds of thousands of dollars, into the accounts of the Defendants, including significant physical transfers made in the direct presence of Michael J. Macken. Among these transfers, a sum of $40,000 was misappropriated by Omar Fitzgerald to cover unauthorized and fraudulent expenses, a fact he expressly admitted to Alex Wilson. These funds were not applied toward any legitimate business

purpose but were instead utilized to further the fraudulent scheme, thereby perpetuating the illicit enterprise central to this RICO action.

25. In late 2020, the Plaintiffs were introduced to several individuals through mutual contacts. This began with Sonja Nuttall, who connected them to Lassara Hall, followed by Colum Rooney. In February 2021, Rooney introduced the Plaintiffs to Michael Joseph Macken. Subsequently, in February 2022, Macken introduced his business partner, Omar Fitzgerald. Finally, in early 2023, the Plaintiffs were introduced to Mr. John Hess through another investor, who later agreed to invest in the Plaintiffs' company.

26. In early 2021, Lefalk and Kiesi provided initial financial support to Macken, who was contractually obligated to invest in the Plaintiffs' company by August 2021. It was agreed that a portion of the profits from Macken's financial trading would be reinvested into the Plaintiffs' technology projects focused on combating poverty.

27. In June 2021, the Plaintiffs sent Macken a cease-and-desist letter, citing concerns about the authenticity of documents he had submitted regarding their investments. They sought to avoid agreements with third parties that might involve fraud. Despite this, Macken assured the Plaintiffs of the legitimacy of all transactions, providing seemingly transparent financial documentation.

28. By 2022, Macken, facing financial difficulties, enlisted Fitzgerald to make direct payments to the Plaintiffs as a temporary bridge loan. Fitzgerald subsequently sent falsified documents, including fake passports and forged bank papers, and made threats involving individuals named in the documents, such as Paul Gregory, Alvin Jones, Esq., John Glenn, and Dmitri Petrovic. These documents convinced Lefalk, Kiesi, and other investors to continue supporting Macken.

29. In 2021, the Plaintiffs transferred $40,000 to Macken's accounts, with Macken present for the transactions. A significant portion of these funds was misappropriated by Fitzgerald, who later admitted to this misconduct. Evidence revealed that the Plaintiffs' funds were used for unauthorized trading, which they had not approved, as part of stalling tactics to allow Macken to avoid his obligations and shift responsibilities to Fitzgerald.

30. By early 2022, Macken's inability to meet his financial obligations was evident, and he requested additional financial support from the Plaintiffs. In exchange, he promised to allocate 50% of trading profits to them. However, in March 2023, Macken disappeared, along with several associates. Following his disappearance, Fitzgerald and others, including Regina Robinson, began communicating on Macken's behalf, but Macken himself remained unreachable.

31. The Plaintiffs have since gathered extensive evidence, including hundreds of documents, exposing fraudulent activities by Macken and his associates over a decade. These activities include unauthorized trading and misappropriation of funds, resulting in substantial financial harm to the Plaintiffs.

32. In addition to financial losses, the Plaintiffs have endured ongoing death threats, underscoring the criminal nature of the enterprise. These threats forced individuals, including Lefalk, to relocate to protect his family.

33. The Plaintiffs, in addition to all other remedies legally available to them for relief against the Defendants, are seeking damages equivalent to 50% of the profits from Macken's illicit trades, as well as compensation for other financial losses and hardships. The Plaintiffs assert that the Defendants' actions constitute a long-running criminal enterprise, fulfilling the criteria for RICO/Racketeering claims.

***Creation and Use of Forged Documents***

34. Defendants produced and disseminated falsified financial documents, including bank statements, contracts, and investment portfolios, to mislead Plaintiffs and other investors regarding the status of their funds.

35. Specific evidence includes fabricated emails exchanged between Mr. Macken and John Hess dating back to 2016, which were later uncovered during Plaintiffs' investigation.

***Identity Theft and Use of False Personas***

36. Defendants employed more than 50 false identities, both directly and through proxies, to obstruct legitimate business dealings, delay payments, and intimidate Plaintiffs.

37. These tactics included impersonating government officials and fabricating ties to agencies such as the FBI, further exacerbating the harm inflicted on Plaintiffs.

***Intimidation and Extortion***

38. Plaintiffs, including Juha Kiesi, Honorary Consul of Finland accredited by the U.S. State Department, were subjected to verbal threats and intimidation. Defendants leveraged these threats to silence Plaintiffs and deter them from pursuing legal remedies.

39. These actions caused not only financial harm but also reputational damage, particularly to Juha Kiesi, whose diplomatic standing and business relationships were severely impacted.

***Pattern of Racketeering Activity***

40. Defendants engaged in a consistent and ongoing pattern of racketeering activity, including but not limited to:

41. Wire Fraud (18 U.S.C. § 1343): Transmitting fraudulent financial information via interstate communications to induce investment.

42. Mail Fraud (18 U.S.C. § 1341): Sending falsified documents and contracts through postal services to mislead Plaintiffs.

43. Identity Theft (18 U.S.C. § 1028): Using stolen identities to execute fraudulent transactions.

44. Extortion (18 U.S.C. § 1951): Coercing Plaintiffs through threats and deceit to relinquish funds and assets.

45. These acts form a "pattern of racketeering activity" under 18 U.S.C. § 1961(5), with each act occurring as part of the broader criminal scheme.

***Failure to Meet Obligations and Intentional Delays***

46. Michael J. Macken was obligated to repay the investment with returns but as the payment deadline of March 7, 2023, approached, Michael J. Macken severed all communications with Plaintiffs. In the interim, upon information and belief, Omar Fitzgerald, at the direction of Mr. Macken, submitted falsified documents to justify continued delays and obfuscate the Enterprise's true intent to defraud Plaintiffs permanently.

***International Scope and Impact***

47. The Defendants' fraudulent activities had a profound and foreseeable impact on U.S. commerce, involving U.S. citizens, businesses, and financial institutions.

48. This international fraud scheme included co-conspirators from jurisdictions such as Ireland, Hong Kong, [South American Company]and the United Kingdom, utilizing cross-border financial channels to facilitate the criminal enterprise.

***Specific Damages to Plaintiffs***

49. Plaintiffs have suffered financial losses along with reputational harm, missed business opportunities, and emotional distress.

50. Defendants' deliberate and malicious actions disrupted the operations of Plaintiffs' businesses and eroded investor confidence, resulting in substantial and long-term financial and operational harm. The funds lost by Plaintiffs were specifically intended to increase the valuation of Plaintiffs' companies. Defendants’ racketeering activities directly prevented this anticipated increase in valuation, thereby causing profound financial harm to Plaintiffs.

***Ongoing Criminal Investigation***

51. Michael J. Macken and Omar Fitzgerald are presently the subjects of an active investigation conducted by the Criminal Assets Bureau. The investigation, documented under

Case/File Number GNECB 11-323174/24, underscores the gravity of their alleged involvement in illicit activities pertinent to this complaint.

***Culpable Person***

52. RICO defines a "person" as an "entity capable of holding a legal or beneficial interest in property."

53. Defendants Omar Fitzgerald and Michael J. Macken, along with known co-conspirators including John Hess, are individuals capable of holding a legal or beneficial interest in property, thus meeting the definition of "person" under 18 U.S.C. § 1961(3).

54. These Defendants willfully and maliciously engaged in fraudulent schemes to advance their unlawful objectives, knowing their actions would harm Plaintiffs and others.

***Enterprise***

55. RICO defines an enterprise as "any individual, partnership, corporation, association or other legal entity, and any union or group of individuals associated in fact although not a legal entity."

56. The Defendants, together with their known and unknown co-conspirators, constituted an "enterprise" as defined under 18 U.S.C. § 1961(4). This enterprise, operating as an association-in-fact, consisted of a network of individuals and business entities, including fabricated legal entities, associated for the common purpose of executing a scheme to defraud Plaintiffs and others.

57. The enterprise had an ascertainable structure distinct from the predicate acts of racketeering and operated continuously from at least 2016 to the present. The Enterprise's operations involved the coordination of fraudulent transactions, dissemination of falsified documents, and obstruction of lawful financial transactions.

***Interstate or Foreign Commerce***

58. The Enterprise and its predicate acts affected interstate and foreign commerce.

59. Defendants conducted fraudulent wire transfers through U.S. and international banking institutions, involving U.S.-based victims and cross-border co-conspirators from Ireland, the United Kingdom and other countries.

60. Plaintiffs, including U.S.-based businesses Amprazis Tech Inc., Meligoli Inc., and RYouLive Inc., suffered financial harm directly tied to these activities.

***Pattern of Racketeering***

61. The Defendants engaged in a "pattern of racketeering activity" as defined by 18 U.S.C. § 1961(5), committing multiple related and continuous predicate acts over a substantial period of time.

62. Relatedness: The predicate acts—fraudulent inducement, wire fraud, mail fraud, identity theft, extortion, and obstruction of justice—were interrelated by their purpose of defrauding Plaintiffs, shared methods of execution, and common participants.

63. Continuity: The misconduct spanned over seven years (2016–present), demonstrating a closed-ended continuity, while the ongoing nature of the scheme indicates an open-ended threat of further criminal conduct.

***Racketeering Activity***

64. Defendants' racketeering activities included, but were not limited to, the following predicate acts:

65. Wire Fraud (18 U.S.C. § 1343): Defendants transmitted fraudulent emails, contracts, and wire transfer requests to Plaintiffs, including false promises of repayment and fabricated financial statements.

66. Mail Fraud (18 U.S.C. § 1341): Defendants used mail services to deliver falsified contracts and documentation to bolster their fraudulent representations.

67. Identity Theft (18 U.S.C. § 1028): Defendants utilized more than 50 false identities to impersonate government officials and fabricate transactions.

68. Extortion (18 U.S.C. § 1951): Defendants intimidated Plaintiffs, including threats against Mr. Juha Kiesi, to deter legal action and extract further funds.

69. Obstruction of Justice (18 U.S.C. § 1503): Defendants deliberately destroyed or concealed evidence, including forged financial records, to obstruct investigations into their activities.

***Injury to Plaintiffs***

70. Plaintiffs sustained direct and substantial injuries to their businesses and property "by reason of" the Defendants' RICO violations, as required under 18 U.S.C. § 1964(c).

71. Plaintiffs lost substantial sums due to fraudulent transactions and misappropriated funds.

72. Plaintiffs suffered reputational harm, missed business opportunities, and emotional distress. For instance:

73. Financial Loss: Defendants induced Plaintiffs to transfer substantial sums of money through falsified contracts and false representations of investment opportunities.

74. Reputational Harm: Threats and fabricated ties to law enforcement agencies damaged Juha Kiesi's diplomatic standing and business relationships.

***Statute of Limitations and Fraudulent Concealment***

75. The Defendants actively concealed the true nature of their fraudulent activities, using falsified documents and misleading communications to prevent Plaintiffs from discovering the scheme.

76. Plaintiffs could not have discovered the full scope of the Enterprise's misconduct despite exercising reasonable diligence. As such, the statute of limitations is equitably tolled.

77. Further, as of the date of this Complaint, Omar Fitzgerald continues to send fraudulent emails to Plaintiffs' representatives with false promises to pay the debt owed.

**COUNT I**

**RICO § 1962(c)**

78. Plaintiffs re-allege and incorporate herein by reference all facts and allegations set forth hereinabove, as if fully set forth herein.

79. Defendants agreed to and did conduct and participate in the conduct of the enterprise's affairs through a pattern of racketeering activity for the unlawful purpose of intentionally defrauding Plaintiffs. Specifically:

80. Defendants used interstate wires to email falsified escrow agreements to Plaintiffs, falsely representing the legitimacy of transfer.

81. Defendants transmitted fraudulent contractual documents through electronic mail to deceive Plaintiffs into transferring funds.

82. Defendants executed financial transactions using wire transfers to obscure the fraudulent nature of the enterprise's activities.

83. Pursuant to and in furtherance of their fraudulent scheme, the Count I Defendants committed multiple related acts of wire fraud, mail fraud, and financial transaction fraud, each of which constitutes racketeering activity as defined in 18 U.S.C. § 1961(1).

84. The acts described above constitute a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5).

85. Defendants have directly and indirectly conducted and participated in the conduct of the enterprise's affairs through the pattern of racketeering activity described above, in violation of 18 U.S.C. § 1962(c).

86. As a direct and proximate result of the Count I Defendants' racketeering activities and violations of 18 U.S.C. § 1962(c), Plaintiffs have been injured in their business and property in that:

87. Plaintiffs lost money due to fraudulent transfers orchestrated by the Defendants.

88. Plaintiffs incurred significant legal fees, investigative costs, and reputational harm.

**COUNT II**

**RICO § 1962(a)**

89. Plaintiffs re-allege and incorporate herein by reference all facts and allegations set forth hereinabove, as if fully set forth herein.

90. Defendants used and invested income that was derived from a pattern of racketeering activity in an interstate enterprise. Specifically:

91. Defendants reinvested proceeds from the fraudulent transactions into the enterprise to perpetuate further fraudulent schemes and obscure their activities.

92. The acts described above constitute a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5).

93. As a direct and proximate result of Defendants' racketeering activities and violations of 18 U.S.C. § 1962(a), Plaintiffs have been injured in their business and property in that:

94. Plaintiffs suffered financial loss due to continued fraudulent schemes financed by Defendants' illegal proceeds.

**COUNT III**

**RICO § 1962(b)**

95. Plaintiffs re-allege and incorporate herein by reference all facts and allegations set forth hereinabove, as if fully set forth herein.

96. Defendants acquired and maintained interests in and control of the enterprise through a pattern of racketeering activity. Specifically:

97. Defendants leveraged proceeds from fraudulent schemes to purchase controlling interests in affiliated entities that facilitated further fraudulent activities.

98. Defendants used the proceeds of racketeering to bribe key individuals within the enterprise to maintain operational control and expand the scope of fraudulent activities.

99. The acts described above constitute a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5).

100. The Count III Defendants have directly and indirectly acquired and maintained interests in and control of the enterprise through the pattern of racketeering activity described above, in violation of 18 U.S.C. § 1962(b).

101. As a direct and proximate result of Defendants' racketeering activities and violations of 18 U.S.C. § 1962(b), Plaintiffs have been injured in their business and property in that:

102. Plaintiffs' financial losses were exacerbated by Defendants' control over entities used to execute ongoing fraudulent schemes.

103. Plaintiffs suffered loss of business opportunities due to Defendants' unlawful competitive advantage gained through racketeering activities.

## COUNT IV

## RICO § 1962(d)

104. Plaintiffs re-allege and incorporate herein by reference all facts and allegations set forth hereinabove, as if fully set forth herein.

105. As set forth above, Defendants agreed and conspired to violate 18 U.S.C. § 1962(a), (b), and (c). Specifically:

106. The Count IV Defendants conspired to use or invest income derived from a pattern of racketeering activity in an interstate enterprise (§ 1962(a)).

107. The Count IV Defendants conspired to acquire or maintain interests in and control of the enterprise through a pattern of racketeering activity (§ 1962(b)).

108. The Count IV Defendants conspired to conduct and participate in the conduct of the enterprise's affairs through a pattern of racketeering activity (§ 1962(c)).

109. The Count IV Defendants intentionally conspired and agreed to directly and indirectly engage in the predicate acts described herein. They knew their predicate acts were part

of a pattern of racketeering activity and agreed to the commission of those acts to further their schemes.

110. The predicate acts and overt actions committed in furtherance of the conspiracy include but are not limited to:

111. Wire fraud, including fraudulent emails and wire transfers.

112. Mail fraud, including the transmission of falsified documents via U.S. mail.

113. Money laundering through the reinvestment of fraudulent proceeds in enterprise-affiliated entities on or about [specific dates].

114. As a direct and proximate result of the Count IV Defendants' conspiracy, overt acts taken in furtherance of that conspiracy, and violations of 18 U.S.C. § 1962(d), Plaintiffs have been injured in their business and property in that:

115. Plaintiffs incurred direct financial losses because of overt acts furthering the conspiracy.

116. Plaintiffs have been forced to expend resources on legal and investigative measures to mitigate the harm caused by the conspiracy.

## PRAYER FOR RELIEF

117. Wherefore, plaintiffs respectfully request that this Honorable Court grant the following relief against Defendants, jointly and severally:

***Compensatory Damages***

118. Award Plaintiffs compensatory damages in the amount to be determined at trial plus prejudgment and post-judgment interest, representing the direct and consequential financial losses, including;

119. The full amount of the investments;

120. Lost business opportunities and revenue streams;

121. Reputational damage suffered by Plaintiffs and their affiliated entities.

***Punitive Damages***

122. Award punitive damages in the amount to be determined at trial, to punish Defendants for their willful, malicious, and reckless conduct, and to deter similar misconduct by others in the future.

***Treble Damages Under RICO***

123. Pursuant to 18 U.S.C. § 1964(c), award Plaintiffs treble damages for Defendants' violations of the Racketeer Influenced and Corrupt Organizations Act (RICO), in an amount equal to three times the compensatory damages awarded.

***Injunctive Relief***

124. Issue immediate and permanent injunctive relief to prevent Defendants from:

125. Continuing their fraudulent activities;

126. Dissipating or transferring assets derived from their illegal activities;

127. Engaging in any business dealings that may impact Plaintiffs or other investors.

128. Specifically, Plaintiffs request the Court to:

129. Freeze Defendants' assets, including bank accounts, real property, and other holdings, to preserve funds for restitution.

130. Prohibit Defendants from operating or creating new business entities without court approval.

***Disgorgement of Profit***

131. Order Defendants to provide a full accounting of all profits obtained through their unlawful activities and to disgorge such profits, including unauthorized trades, misappropriated investments, and any proceeds derived from the fraudulent enterprise.

***Restitution***

132. Award restitution to Plaintiffs for all funds and assets wrongfully taken, misappropriated, or fraudulently obtained by Defendants, including interest accrued thereon.

***Attorney's Fees and Costs***

133. Award Plaintiffs their reasonable attorney's fees, expert witness fees, and litigation costs incurred in pursuing this action, pursuant to 18 U.S.C. § 1964(c) and other applicable laws.

***Appointment of a Monitor***

134. Appoint an independent auditor or monitor to oversee Defendants' financial dealings and compliance with the Court's orders, ensuring no further harm to Plaintiffs or others.

***Criminal Restitution***

135. Should Defendants face criminal prosecution, require them to make criminal restitution to Plaintiffs as part of any conviction or plea agreement, consistent with applicable laws.

***Declaratory Relief***

136. Enter a declaratory judgment that:

137. Defendants have engaged in racketeering activity as defined under RICO.

138. Plaintiffs are entitled to the remedies sought under federal law.

***Any Additional Relief***

139. Grant such other and further relief as the Court may deem just, proper, and equitable under the circumstances.

**LAW OFFICES OF JOHN W. FAGERHOLM, LTD.**

Dated: December 9, 2024

By: /s/ M. Danton Richardson
M. Danton Richardson, Esq.
Attorney for Plaintiffs

**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury in this action.

**LAW OFFICES OF JOHN W. FAGERHOLM, LTD.**

Dated: December 9, 2024

By: /s/ M. Danton Richardson
M. Danton Richardson, Esq.
Attorney for Plaintiffs